UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OTONIEL TYLER PENNINGS,<br><br>Plaintiff,<br><br>v.<br><br>R. BROOMFIELD, *et al*.,<br><br>Defendants. | Case No. 1:15-cv-01183-AWI-EPG<br><br>FINDINGS AND RECOMMENDATIONS TO DISMISS CLAIMS CONSISTENT WITH MAGISTRATE JUDGE'S PRIOR ORDER IN LIGHT OF <u>WILLIAMS</u> DECISION<br><br>FINDINGS AND RECOMMENDATIONS THAT DEFENDANTS' MOTION TO DISMISS BE GRANTED<br><br>(ECF Nos. 1, 10, 12, 21, 26)<br><br>OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN (14) DAYS |

Otoniel Tyler Pennings ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action filed pursuant to 42 U.S.C. § 1983. Plaintiff consented to magistrate judge jurisdiction. (ECF No. 6.) Defendants have not yet consented to magistrate judge jurisdiction or declined to consent to magistrate judge jurisdiction.

The Court previously screened Plaintiff's complaint before Defendants appeared. (ECF No. 10). The Court found that Plaintiff stated two cognizable claims for 1) conditions of confinement in violation of the Eighth Amendment (Count I), and 2) retaliation in violation of the First Amendment (Count II) against the Warden, Captain R. Broomfield, Captain B.J. Weaver, Sergeant A. Perez, Correctional Officer ("C/O") F. Nava, C/O L. Borges, C/O F. Rodriguez, John Doe #2, John Doe #3, and John Doe #4 for conditions of confinement in violation of the Eighth Amendment and for retaliation in violation of the First Amendment. (ECF No. 10, pp. 2, 16.) Additionally, the Court found that the Complaint states a due process claim against Senior Hearing Officer C. Munoz, C/O J. Torres, and C/O L. Borges. (<u>Id</u>.) Finally, the Court found that Plaintiff did not state any other cognizable claims. (<u>Id</u>.) As a result, Defendants Defendants J.C. Smith and D. Goree were dismissed; Plaintiff's deliberate indifference to serious medical needs claim was dismissed without prejudice; Plaintiff's due process claim (property deprivation) was

dismissed with prejudice; and Plaintiff's due process claim (appeals process) was dismissed with prejudice. (ECF No. 12, pp. 2-3.) Prior to the Court dismissing claims and defendants, Plaintiff agreed to proceed only on the claims found cognizable by the Court. (ECF No. 11).

As described below, in light of Ninth Circuit authority, this Court is recommending that the assigned district judge dismiss claims and defendants consistent with the order by the magistrate judge at the screening stage.

## I. WILLIAMS v. KING

On November 9, 2017, the United States Court of Appeals for the Ninth Circuit held that a magistrate judge lacked jurisdiction to dismiss a prisoner's case for failure to state a claim at the screening stage where the Plaintiff had consented to magistrate judge jurisdiction and defendants had not yet been served. Williams v. King, 875 F.3d 500 (9th Cir. 2017). Specifically, the Ninth Circuit held that "28 U.S.C. § 636(c)(1) requires the consent of all plaintiffs and defendants named in the complaint—irrespective of service of process—before jurisdiction may vest in a magistrate judge to hear and decide a civil case that a district court would otherwise hear." Id. at 501.

Here, the defendants were not served at the time the Court issued its order dismissing claims and defendants, and therefore had not appeared or consented to magistrate judge jurisdiction. Accordingly, the magistrate judge lacked jurisdiction to dismiss claims and defendants based solely on Plaintiff's consent.

In light of the holding in Williams, this Court will recommend to the assigned district judge that he dismiss the claims and defendants previously dismissed by this Court, for the reasons provided in the Court's screening order.

## II. SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been

2

paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). The mere possibility of misconduct falls short of meeting this plausibility standard. Id. at 679. While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted). Additionally, a plaintiff's legal conclusions are not accepted as true. Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers." Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

### III. SUMMARY OF PLAINTIFF'S COMPLAINT

The events at issue in the Complaint allegedly occurred at Corcoran State Prison ("CSP") in Corcoran, California.[1] Plaintiff names as defendants J.C Smith (Chief Deputy Warden), Captain R. Broomfield, Captain B.J. Weaver, Sergeant A. Perez, Lieutenant C. Munoz, D. Goree (Correctional Counselor), C/O L. Borges, C/O F. Nava, C/O F. Rodriguez, C/O J. Torres, John Doe #1 (CSP Warden), and John Does #2–4 (CSP C/Os).

The Complaint alleges that on July 15, 2013, Plaintiff blacked out in his cell. Plaintiff recently participated in a peaceful hunger strike (July 8–12, 2013) protesting the conditions in the Security Housing Unit ("SHU") and was recovering from completing a Hepatitis C treatment. Plaintiff's cellmate called for assistance. C/O F. Nava and John Doe #2 escorted Plaintiff to be medically evaluated, but Nurse Jane Doe #1 refused to allow further evaluation by a doctor

---

[1] Plaintiff currently is an inmate at the Centinela State Prison in Imperial, California.

3

because Plaintiff participated in the hunger strike. Thereafter, C/O F. Nava and John Doe #2 escorted Plaintiff to a yard cage. C/O F. Nava told Plaintiff that he would not be seen by a doctor because Plaintiff participated in the hunger strike. John Doe #2 asked Plaintiff, "Whose side do you think they (medical staff) are on?" Plaintiff stayed in the yard cage for approximately two hours in cold and windy weather. He was only wearing undershorts (boxers), an undershirt, socks, and shoes.

Subsequently, C/O F. Nava and John Doe #2 moved Plaintiff from the 4B yard to the 4A yard. C/O F. Nava told Plaintiff he was being moved because he had participated in the hunger strike and refused to go back to his assigned cell in Facility 4B. Plaintiff stated he never refused to go back to his cell and only was requesting adequate medical treatment. John Doe #2 told Plaintiff, "Now you'll really have something to complain about." When asked what he meant, John Doe #2 responded, "You'll see, 4A runs their own program."

When Plaintiff arrived at Facility 4A, he was greeted by Sergeant A. Perez, who told Plaintiff, "If you want to hunger strike, I'll make your life a living hell." Plaintiff was put into a cell with a ripped mattress that had trash, pubic hair, and fecal matter smeared and scattered throughout the cell. Plaintiff asked C/O F. Nava, John Doe #2, and Sergeant A. Perez for cleaning supplies. Sergeant A. Perez responded that Plaintiff would not receive anything and "this is what you get for hunger striking." Plaintiff's requests for state-issued clothing and linens, adequate cleaning and hygiene supplies, and his personal property were refused by C/O F. Nava, John Doe #2, and Sergeant A. Perez. Sergeant A. Perez told Plaintiff that they had been instructed by the Warden, Captain R. Broomfield, and Captain B.J. Weaver to withhold all property from hunger strikers.

On the following day (July 16, 2013), Plaintiff continued to request clothing, linen, his personal property, and cleaning and hygiene supplies. At first, Plaintiff was ignored and given the silent treatment by the correctional officers present in 4A/4L. Eventually, C/O L. Borges and John Doe #3 stopped by Plaintiff's cell and told him that they did not care about what he was entitled to and they had been ordered by Sergeant A. Perez to give Plaintiff the silent treatment and that

Plaintiff was on "shit status."[2] Plaintiff showed C/O L. Borges and John Doe #3 his torn mattress and informed them that he was forced to lay inside the mattress because he became so cold that he turned blue. C/O L. Borges laughed and threatened to write Plaintiff up.

Later that same day, C/O F. Rodriguez and John Doe #4 gave Plaintiff the silent treatment. They eventually explained to Plaintiff that Sergeant A. Perez specifically instructed them to not give Plaintiff or any hunger strikers any cleaning supplies, state-issued clothing and linen, or personal property. C/O F. Rodriguez and John Doe #4 did not allow Plaintiff to walk to the shower with his shoes even though the shower had not been cleaned and Plaintiff did not have access to his shower shoes. C/O F. Rodriguez and John Doe #4 did not exchange razors prior to Plaintiff's use. Plaintiff alleges that he was reinfected with Hepatitis C because the razor he used was previously used and never exchanged. Sergeant A. Perez was aware that the correctional officers on third watch were not exchanging the razors and thought it was funny.

On July 19, 2013, the second watch gave Plaintiff a roll of toilet paper, one bar of soap, and one sheet. From July 21 to 25, 2013, Plaintiff resumed his participation in the hunger strike. On July 24, 2013, third watch gave Plaintiff one T-shirt, boxers, and a pair of socks. On July 28, 2013, Plaintiff filed a group 602 grievance on behalf of himself and other inmates. The inmates who signed the group 602 originally had been housed in 4B and moved to 4A/4L/B-section. They had been restricted from cleaning and hygiene supplies, state-issued clothing and linens, and personal property because they had participated in the hunger strike. In response to the filing of the 602 grievance, C/O L. Borges and Sergeant A. Perez made threats to physically assault Plaintiff.

On August 14, 2013, the group 602 grievance was processed and assigned to "AW4A," who Plaintiff alleges was Chief Deputy Warden J.C. Smith. On August 26, 2013, the group 602 grievance was canceled because property appeals could not be processed as group appeals. On September 30, 2013 and November 5, 2013, Plaintiff attempted to explain to the Appeal's Office that the group 602 grievance concerned the retaliatory restrictions placed by the administration,

---

[2] Plaintiff explains that this meant that he would not have anything coming regardless of the rules. Plaintiff alleges this is a well-known and well-used underground policy at CDCR.

one of which was inappropriately withholding property. Correctional Counselor D. Goree ignored Plaintiff's explanation and continued to cancel the group appeal. Plaintiff alleges that CDW J.C. Smith and Correctional Counselor D. Goree discussed the group 602 and based on the ongoing hunger strike, cancelled the group 602 to prevent and delay the grievance from being addressed and exhausted. Eventually, D. Goree accepted and processed the 602 after Plaintiff resubmitted the grievance as an individual appeal. Plaintiff's individual appeal was denied at the first level of review because by that time Plaintiff's property had been returned.

Meanwhile, on August 6, 2013, Plaintiff had a hearing on a rules violation report ("RVR") for refusing housing. Plaintiff was not given adequate assistance prior to the hearing to prepare and was not allowed to call witnesses. However, Plaintiff was provided an opportunity to explain his side of the story. Lieutenant A.M. Gonzales found Plaintiff not guilty and informed Plaintiff that he would be returned back to his original housing and cellmate. C/O L. Borges told Plaintiff that he got lucky this time, but when Borges writes Plaintiff up on an RVR he will not be lucky. On August 15, 2013, Plaintiff went to the recreation yard and overheard C/O L. Borges asking other inmates if they wanted a cellmate and who they had in mind. Plaintiff asked Borges if he could be sent back to his original housing and cellmate given that Lieutenant A.M. Gonzales stated that the move would occur. C/O L. Borges laughed and said he would rather give Plaintiff an RVR than move Plaintiff. Later that day, Borges served Plaintiff with an RVR for refusing assigned housing even though Plaintiff was never asked to cell up with any other inmate.

On August 21, 2013, C/O J. Torres was assigned as Plaintiff's investigative employee ("IE") to assist Plaintiff in preparing for the RVR hearing. As Plaintiff was housed in the SHU and unable to collect evidence on his own behalf, Plaintiff asked Torres to collect statements from inmates Perez, Guzman, and Luna regarding whether they were ever asked to cell up with Plaintiff. C/O J. Torres refused to collect statements from inmates Perez and Luna. Inmate Guzman stated that he had never been asked to cell up with Plaintiff. Plaintiff requested that Inmates Perez, Guzman, and Luna, C/O L. Borges, and Sergeant A. Perez be present at the hearing. C/O J. Torres informed Plaintiff that he was only going to be allowed one witness in addition to the reporting officer, C/O L. Borges. Plaintiff asked Torres for a copy of Plaintiff's

previous RVR of which he was found not guilty, but Torres failed to provide a copy.

At the RVR hearing, Plaintiff informed the Senior Hearing Officer ("SHO"), C. Munoz, that none of his witnesses were present and C/O J. Torres did not collect statements from Perez and Luna. Munoz proceeded with the hearing, telling Plaintiff that it did not matter whether his witnesses were present or how many statements Plaintiff provided. Munoz stated that he would not "go against green"3 and because C/O L. Borges said Plaintiff was guilty, Munoz would and did find Plaintiff guilty of refusing housing. SHO C. Munoz allowed C/O L. Borges and C/O J. Torres to be present during disposition of discipline. Borges told Munoz to impose 180 days of loss of privileges and 180 days of loss of credit because Plaintiff "got away with" refusing a cellmate last time. Borges also informed Munoz that Plaintiff was a documented gang member, participated in the hunger strike, and had been filing grievances against the floor staff in 4A/4L. SHO C. Munoz ultimately imposed 180 days of loss of privileges, 10 days of loss of yard, and 90 days of loss of credit.

## IV. ANALYSIS OF PLAINTIFF'S CLAIMS

### A. Section 1983 Legal Standards

The Civil Rights Act under which this action was filed provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor, 490 U.S. 386, 393-94 (1989) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)); see also Chapman v. Houston Welfare Rights Org., 441 U.S. 600, 618 (1979); Hall v. City of Los

---

[3] Plaintiff alleges that "green" refers to CDCR employees.

Angeles, 697 F.3d 1059, 1068 (9th Cir. 2012); Crowley v. Nevada, 678 F.3d 730, 734 (9th Cir. 2012); Anderson v. Warner, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law. Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); see also Marsh v. Cnty. of San Diego, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law"). A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" Preschooler II v. Clark Cnty. Sch. Bd. of Trs., 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms." Preschooler II, 479 F.3d at 1183 (quoting Johnson, 588 F.2d at 743). This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause." Arnold v. Int'l Bus. Mach. Corp., 637 F.2d 1350, 1355 (9th Cir. 1981); see also Harper v. City of Los Angeles, 533 F.3d 1010, 1026 (9th Cir. 2008).

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of *respondeat superior* and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). To state a claim for relief under section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that the supervisory defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). For instance, a supervisor may be liable for his "own culpable action

8

or inaction in the training, supervision, or control of his subordinates," "his acquiescence in the constitutional deprivations of which the complaint is made," or "conduct that showed a reckless or callous indifference to the rights of others." Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991) (internal citations, quotation marks, and alterations omitted).

### A. Eighth Amendment Claims

#### 1. Medical Care

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which [the prisoner] is confined are subject to scrutiny under the Eighth Amendment." Helling v. McKinney, 509 U.S. 25, 31 (1993); see also Farmer v. Brennan, 511 U.S. 825, 832 (1994). Conditions of confinement may, consistent with the Constitution, be restrictive and harsh. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006); Osolinski v. Kane, 92 F.3d 934, 937 (9th Cir. 1996); Jordan v. Gardner, 986 F.2d 1521, 1531 (9th Cir. 1993) (*en banc*). Prison officials must, however, provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986), abrogated in part on other grounds by Sandin v. Connor, 515 U.S. 472 (1995); see also Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000); Hoptowit v. Ray, 682 F.2d 1237, 1246 (9th Cir. 1982); Wright v. Rushen, 642 F.2d 1129, 1132–33 (9th Cir. 1981).

"[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006), (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). This requires plaintiff to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096 (quoting McGuckin v. Smith, 974 F.2d 1050, 1059–60 (9th Cir. 1992) (citation and internal quotations marks omitted), overruled on other grounds by WMX Technologies v. Miller, 104 F.3d 1133 (9th Cir. 1997) (*en banc*)). Deliberate indifference is established only where the defendant *subjectively* "knows of and disregards an *excessive risk* to inmate health and safety."

9

Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted). Deliberate indifference can be established "by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096 (citation omitted). Civil recklessness (failure "to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known") is insufficient to establish an Eighth Amendment violation. Farmer v. Brennan, 511 U.S. 825, 836–37 & n.5 (1994) (citations omitted).

Plaintiff's allegations are insufficient to state a medical care claim. The Complaint merely states that Plaintiff blacked out in his cell and does not clearly allege facts demonstrating that defendants subjectively knew of and disregarded an excessive risk to Plaintiff's health. In other words, there are not sufficient facts to indicate that failure to treat Plaintiff's condition could result in further significant injury or the unnecessary and wanton infliction of pain, or that Plaintiff suffered harm that was caused by the alleged indifference.

### B. Due Process Claims

#### 1. Property Deprivation

The Due Process Clause protects prisoners from being deprived of property without due process of law, Wolff v. McDonnell, 418 U.S. 539, 556 (1974), and prisoners have a protected interest in their personal property, Hansen v. May, 502 F.2d 728, 730 (9th Cir. 1974). Authorized intentional deprivation of property pursuant to an established state procedure is actionable under the Due Process Clause. See Hudson v. Palmer, 468 U.S. 517, 532 & n.13 (1984) (citing Logan v. Zimmerman Brush Co., 455 U.S. 422, 435-36 (1982)); Quick v. Jones, 754 F.2d 1521, 1524 (9th Cir. 1985). On the other hand, "an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson, 468 U.S. at 533. California law provides a postdeprivation remedy for any property deprivations. Barnett v. Centoni, 31 F.3d 813, 816–17 (9th Cir. 1994) (citing Cal. Gov't Code §§ 810–95).

Plaintiff's allegations are insufficient to state a due process claim for the temporary

deprivation of his personal property. The Complaint does not clearly allege facts demonstrating that Plaintiff was intentionally deprived of his personal property pursuant to any established state procedure, regulation, or statute. See Piatt, 773 F.2d at 1036. The unauthorized deprivation of property, be it negligent or intentional, does not give rise to a claim for relief under the Due Process Clause. See Hudson, 468 U.S. at 533.

### 2. Appeals Process

Prison officials' actions in responding to Plaintiff's grievance, alone, cannot give rise to any claims for relief under § 1983 for violation of due process. "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates." Buckley v. Barlow, 997 F.2d 494, 495 (8th Cir. 1993) (citing Azeez v. DeRobertis, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); see also Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no entitlement to a specific grievance procedure); Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) (existence of grievance procedure confers no liberty interest on prisoner); Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988). "Hence, it does not give rise to a protected liberty interest requiring the procedural protections envisioned by the Fourteenth Amendment." Azeez, 568 F. Supp. at 10; Spencer v. Moore, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

To the extent Plaintiff attempts to base a due process claim on prison officials' failure to process the group 602 grievance, the Complaint fails to state a cognizable claim. As Plaintiff has neither a liberty interest, nor a substantive right in inmate appeals, Plaintiff fails to state a cognizable due process claim for the processing and/or reviewing of the group 602 grievance.

### 3. Disciplinary Proceeding

In the January 30, 2017 screening order, the Court found these allegations sufficient to state a cognizable due process claim against Senior Hearing Officer C. Munoz, C/O J. Torres, and C/O L. Borges. (ECF No. 10, p. 15.) In a footnote, the Court noted that a "jurisdictional issue may exist with this claim." (Id. n.4) (citing Nettles v. Grounds, 830 F.3d 922 (9th Cir. 2016) (en banc). However, the Court permitted the claim to proceed and the defendants were served with process.

In Heck v. Humphrey, 512 U.S. 477, 486-87 (1994), the United States Supreme Court held that to recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid," a § 1983 plaintiff must prove that the conviction or sentence was reversed, expunged, or otherwise invalidated. The favorable-termination rule laid out in Heck preserves the rule that claims which, if successful, would necessarily imply the invalidity of a conviction or sentence, must be brought by way of petition for writ of habeas corpus, after exhausting appropriate avenues for relief. Muhammad v. Close, 540 U.S. 749, 750-751 (2004). The Supreme Court extended the Heck favorable termination rule to prison disciplinary proceedings. Edwards v. Balisok, 520 U.S. 641, 648 (1997); Nettles v. Grounds, 830 F.3d 922, 927 (9th Cir. 2016), cert. denied, No. 16-6556, 2017 WL 69407 (U.S. Jan. 9, 2017).

"Challenges to disciplinary proceedings are barred by Heck only if the § 1983 action would be seeking a judgment at odds with [the prisoner's] conviction or with the State's calculation of time to be served." Id., at 927. "…[I]f the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed…." Heck, 512 U.S. at 487.

"The applicability of the favorable termination rule turns solely on whether a successful § 1983 action would ***necessarily*** render invalid a conviction, sentence, or administrative sanction that affected the length of the prisoner's confinement." Ramirez v. Galaza, 334 F.3d 850, 856 (9th Cir. 2003). In Smithart v. Towery, 79 F.3d 951, 952 (9th Cir. 1996), the court held that, "if a criminal conviction arising out of the same facts stands and is fundamentally inconsistent with the unlawful behavior for which section 1983 damages are sought, the 1983 action must be dismissed." But if the "action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit." Heck, 512 U.S. at 487 "In evaluating whether claims are barred by *Heck,* an important touchstone is whether a § 1983 plaintiff could prevail only by negating 'an element of the offense of which he has been convicted.'" Cunningham v. Gates, 312 F.3d 1148, 1153-54 (9th Cir.2002) (quoting Heck, 512 U.S. at 487).

On June 6, 2017, Defendants Senior Hearing Officer C. Munoz, C/O J. Torres, and C/O L. Borges appeared and filed a motion to dismiss contending that the due process claim against them should be dismissed as barred under Heck v. Humphrey and Edwards v. Balisok. (ECF Nos. 21, 26.) These Defendants argue that Plaintiff's due process claim necessarily implies the invalidity of the guilty finding from his RVR hearing, and that Plaintiff has alleged that the length of his sentence was affected by the result of the hearing.[4] Therefore, the due process claim falls within the "core of habeas" as discussed in Nettles, and Plaintiff's exclusive remedy to attack the validity of the guilty finding is habeas corpus.

These Defendants point to pages 8-9 of the Complaint. (ECF No. 1-1.) After describing the due process violations related to the RVR hearing, paragraph 102 states that Senior Hearing Officer C. Munoz "took 90 days of credit loss (which extends his release date)." (Id. at 8:23.) Furthermore, paragraph 112 provides that "[a]s a result of" the RVR hearing due process violations, "Plaintiff [lost] 90 credit days (from release date)." (Id. at 9:23-24.) In the next paragraph, Plaintiff states that "this unfair and excessive finding of guilt and punishment still affects Plaintiff since his release date was affected and the RVR is on Plaintiff's 'C-File' and may be used against Plaintiff in the future." (Id. at 9:26-28.)

The Court agrees that the allegations, as stated in the Complaint, fall squarely within the scope of the favorable termination rule described in Heck and Edwards. On the face of the Complaint, Plaintiff is clearly alleging that the length of his sentence was affected by the invalid guilty finding in the RVR hearing.

Plaintiff has filed a response to the motion to dismiss. (ECF No. 31.) While Plaintiff acknowledges that his Complaint states that the length of sentence was affected by the invalid RVR hearing resulting in good time credits, he claims that the length of sentence was not affected by the guilty finding because he was ineligible to earn good time credits. Plaintiff has requested

---

[4] The parties have requested the Court to take judicial notice of certain State court records. (ECF Nos. 22, 31.) The Court notes that the records establish that Plaintiff is, in fact, serving a determinate sentence. Other than that fact, the undersigned does not find it necessary to take judicial notice of these records to reach a conclusion because the content of Complaint is sufficiently clear and treated as true and correct at this stage of the proceedings.

13

the Court to take judicial notice of certain facts related to his sentence that he argues would demonstrate that he is ineligible to earn good time credits.

In deciding a Rule 12(b)(6) motion to dismiss, the court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine …, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179 (2007) (citing 5B Wright & Miller § 1357 (3d ed.2004 and Supp.2007)). The Court may take judicial notice of a "fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b); Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001) (providing that a court may not take judicial notice of a fact that is "subject to reasonable dispute").

The facts that Plaintiff requests the Court to take judicial notice of are contained in a printout titled "Legal Status Summary" that purports to show CDCR prison term data relating to Plaintiff's sentence. (ECF No. 31, pp. 22-23). The Court declines to take judicial notice of the exhibit because it does not meet the requirements of Federal Rule Evidence 201(b). Plaintiff concedes that reading the allegations of his Complaint literally would result in dismissal. (ECF No. 31, p. 5, describing to a "grammatical error" in the Complaint.) Thus, it would appear that the most appropriate course of action would be to permit Plaintiff leave to file a First Amended Complaint.[5]

Based upon the state of the pleadings presently before the Court, the Court will recommend that Defendants' motion to dismiss be granted and that Plaintiff's due process claim be dismissed with leave to amend.

### V. JOHN DOE DEFENDANTS

The Court previously found that the Complaint stated cognizable claims against Defendants John Doe #2, John Doe #3, and John Doe #4 for conditions of confinement in

---

[5] It is noted that Court granted leave to amend on a prior occasion (ECF No. 10), but Plaintiff notified the Court that he intended to proceed only on the claims found cognizable by the Court (ECF No. 11).

14

violation of the Eighth Amendment and for retaliation in violation of the First Amendment. (ECF No. 10, pp. 2, 10, 12.)  Plaintiff was informed on January 30, 2017 that the Doe defendants must be identified in order for the case to proceed against them. (Id. at 15.)  In its March 13, 2017 Order, the Court granted Plaintiff 90 days to identify the Doe defendants and informed Plaintiff that he may request the Court's assistance regarding the issuance of third-party subpoenas to accomplish this task. (ECF No. 12, p. 2.)  On June 19, 2017, the Court granted an additional 90-days to identify the Doe defendants. (ECF No. 25.)

The 180 days granted to Plaintiff for identifying the Doe defendants has passed.  Plaintiff has not requested the Court's assistance in issuing a subpoena and there is no indication that Plaintiff has attempted to identify the Doe defendants.  Accordingly, it will be recommended that the Doe defendants be dismissed without prejudice.

## VI. CONCLUSION AND RECOMMENDATIONS

For the foregoing reasons, IT IS HEREBY RECOMMENDED that

1. The following claims and Defendants be dismissed from this action:
    a. Plaintiff's deliberate indifference to serious medical needs claim without prejudice;
    b. Plaintiff's due process claim (property deprivation) with prejudice;
    c. Plaintiff's due process claim (appeals process) with prejudice;
    d. Plaintiff's due process claim (disciplinary proceeding) with leave to amend;
    e. Defendants Senior Hearing Officer C. Munoz, C/O J. Torres, J.C. Smith, and D. Goree; and
    f. All John Doe Defendants.
2. Defendants Senior Hearing Officer C. Munoz, C/O J. Torres, and C/O L. Borges' motion to dismiss (ECF No. 21, 26) be GRANTED.

If these recommendations are adopted in full, this action will proceed only against Defendants Warden, Captain R. Broomfield, Captain B.J. Weaver, Sergeant A. Perez, Correctional Officer ("C/O") F. Nava, C/O L. Borges, C/O F. Rodriguez for:

1. Count I: Conditions of confinement in violation of the Eighth Amendment; and
2. Count II: Retaliation in violation of the First Amendment.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven (7) days after service of the objections. The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **December 15, 2017**

/s/ Erica P. Grosjean
UNITED STATES MAGISTRATE JUDGE